## ALBANY LAND COMPANY v. RICKEL.

[No. 19,958. Filed February 25, 1904.]

CONTRACTS.—*Consideration.*—*Mutuality.*—*Term of Existence.*—A contract between a land company and a real estate agency whereby the latter was to take charge of the real estate of the former and sell and dispose of the same at such prices as might be deemed advantageous, for which the land company agreed to pay a commission of ten per cent. on all sales, and to locate factories upon the land upon such terms as should thereafter be agreed upon, is not invalid for want of consideration, mutuality, or lack of definite term of existence. *pp. 224–226.*

APPEAL AND ERROR.—*Interrogatories to Jury.*—Where, in support of a motion for judgment notwithstanding the general verdict, only a part of the interrogatories and answers are set out in the briefs, the Supreme Court will consider only those thus pointed out. *pp. 226, 227.*

SAME.—*Verdict.*—*Answers to Interrogatories.*—*Conflict.*—The special findings of the jury in answer to interrogatories will not prevail against the general verdict unless the facts so found when considered of themselves, and after indulging all reasonable presumptions against them, are found inherently so repugnant and inconsistent with the general verdict,

Albany Land Co. *v.* Rickel.

supported by all reasonable intendments, that they can not be reconciled therewith, and one or the other is necessarily erroneous.   *p. 228.*

APPEAL.—*Verdict.*—*Answers to Interrogatories.*—*Presumptions.*—Any fact that might have been proved under the issues must be considered as proved in determining the legal force of answers to interrogatories as against the general verdict. *p. 228.*

CONTRACTS.—*Agency.*—*Partnership.*—A contract with a firm of real estate agents, consisting of two members, to sell town lots and assist in locating factories, at a fixed commission for such sales, and a price to be afterward determined by the parties for the location of factories, is not rendered unenforceable by reason of the fact that but one member of the firm conducted the business, where it was not stipulated in the contract whether the business of the agency should be conducted immediately and personally by both or either of the partners.   *pp. 228–230.*

PRINCIPAL AND AGENT.—*Partnership.*—*Assignment of Agency.*—The assent by the principal to the assignment of a contract of agency is equivalent to an agreement to substitute the assignee as agent.   *p. 230.*

TRIAL.—*Answers to Interrogatories.*—*Appeal and Error.*—A special interrogatory which was answered by the jury: "Evidence not conclusive," will be treated as left wholly unanswered.   *p. 230.*

PRINCIPAL AND AGENT.—*Partnership.*—*Assignment of Agency.*—Where a firm consisting of two members entered into a contract for the sale of certain town lots and thereafter one member of the firm assigned his interest in the contract to the other, and the assignee continued to sell lots and make reports thereof in his individual name for a period of seven months, which were received by the principal without objection, such acceptance amounted to a ratification of the assignment.   *pp. 230, 231.*

TRIAL.—*Jury.*—*Impaneling Special Jury.*—*Discretion of Court.*—*Appeal and Error.*—Where a cause was set for trial on a certain day in the next term of court and it appeared when the cause was called for trial that the jury had not been summoned to appear until two days later, the action of the court in calling a special jury from the bystanders, over the defendant's objection, was not reversible error, since it will be presumed that the court had justifiable cause for ordering the special jury. *pp. 231–233.*

From Delaware Circuit Court; *W. O. Barnard*, Special Judge.

Action by Wyllis D. Rickel against the Albany Land Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*W. A. Thompson* and *W. H. Thompson*, for appellant.
*R. S. Gregory*, *A. C. Silverburg* and *W. J. Lotz*, for appellee.

HADLEY, J.—Contract of agency for sale of real estate. Damages for breach. Appellee Rickel sued appellant Albany Land Company for damages for the breach of a written contract which was in these words: "This agreement made and entered into this 11th day of January, 1895, by and between the Albany Land Company of Delaware county, Indiana, and Wyllis D. Rickel and Thomas H. Sprott of Auburn, Indiana, doing business under the firm name and style of Rickel & Sprott, witnesseth, that the said Rickel & Sprott are to have charge of the real estate and personal property belonging to the Albany Land Company at the town of Albany, Delaware county, Indiana, and to sell and dispose of the same at such prices as the said Rickel & Sprott may deem to be to the best advantage of the said land company, and to locate factories upon the land of the said land company, upon such terms as may hereafter be agreed to by and between the parties locating the factories and the said land company. Said land company is to pay said Rickel & Sprott for their services in locating said factories, for taking charge and managing the affairs of said company, a commission of ten per cent. upon the sales of all lots and other real estate made by said Rickel & Sprott. The land company agrees to set aside 150 of their said lots which said Rickel & Sprott are to sell to persons residing in said town of Albany with an agreement with the purchasers of said lots that the money paid by them for said lots shall be used as bonuses to parties locating factories upon the lands of said company in said town of Albany, said land company agrees to set aside 100 lots to be sold to persons residing in various towns in the State of Indiana, at such prices as the said Rickel & Sprott may deem expedient for the purpose of advertising said town and inducing other persons to purchase lots of said company. It is further agreed and understood that the said Rickel & Sprott shall have the exclusive sale of said real estate herein mentioned. In witness whereof, we have hereunto set our hands and

seal this 9th day of May, 1895.  Albany Land Company, by N. T. Dalton, Sec'y.  Rickel & Sprott."

The complaint, which was founded on the contract, in substance, alleged:    That prior to the making of the contract the plaintiff and one Sprott were partners as real estate agents and brokers, residing and doing a large and profitable business in the town of Auburn, Indiana, in the firm name of Rickel & Sprott.  Appellant Albany Land Company was a corporation owning about one thousand lots in the town of Albany, Indiana, which latter town had about one thousand inhabitants, was located in the gas field, and an eligible and favorable place for the location of manufacturing concerns; that the company, desiring to locate factories at Albany, and thereby create a demand and market for its lots, solicited the plaintiff's firm, which had much experience and skill in the location of manufacturing plants, to enter into said contract; that after entering into the contract the plaintiff, for his firm of Rickel & Sprott, gave up his and their business at Auburn, and went to Albany, a distance of ninety miles, and at once entered upon a performance of said contract on the part of Rickel & Sprott, and did, at his firm's expense, in many newspapers, and by printed circulars distributed through the mails, advertise the advantages of Albany as a good and economical place for factories and for investments in town lots, and did visit many places in this and in other states, and personally solicited the location of factories and the purchase of lots, and did succeed in locating factories on the company's said lots, and in selling a large number of the lots; that on March 13, 1896, with the full knowledge and acquiescence of the company, Sprott, for a valuable consideration, assigned to the plaintiff all his interest in the business under said contract; that after said assignment the plaintiff continued to perform the conditions of the contract, with the full knowledge and acquiescence of the company, and did

thereafter sell a large number more of said lots, and could and would, if permitted by the company, have sold all of them within the term of five years from the making of the contract, which was a reasonable time in which to make a sale of all; that the plaintiff faithfully, diligently, and successfully continued to perform all the conditions of the contract on his part to November, 1896, at which time the company, without the consent of the plaintiff, wrongfully and arbitrarily revoked said contract and agency; that the plaintiff was willing and able to continue the contract, and willing and able to perform all the conditions thereof, and make sale of all of the lots, and by the revocation of the contract and agency he was deprived of his profits, and not remunerated for his expenses, etc., whereby he was damaged.

The appellant's demurrer to the complaint was overruled. The case was put at issue and submitted to a jury. Verdict and judgment for appellee, over a motion for a new trial, for $1,500.

Three alleged errors are assigned: (1) The overruling of the demurrer to the complaint; (2) the overruling of appellant's motion for judgment on the answers to interrogatories, notwithstanding the general verdict; (3) the overruling of the motion for a new trial.

1. It is merely suggested, not argued, that the complaint is bad because the foundation contract is invalid for want of consideration, for want of mutuality, and for want of a definite term of existence. The complaint is clearly good against either and all of these alleged infirmities.

2. The jury returned with their general verdict answers to 535 interrogatories, which interrogatories and answers occupy 115 typewritten pages of the record. Four hundred forty-six of these interrogatories were requested by counsel for appellant, but no attempt has been made in their brief to summarize, or state in narrative form, the facts disclosed by the answers. They have contented them-

selves by copying into their brief certain selected numbers, and announcing that they rely upon the particular answers thus indicated in support of their motion for judgment notwithstanding the general verdict. Appellee has in like manner done nothing more than to copy into his brief certain other numbers, as tending to overcome the force of those presented by appellant. We have therefore, under clause five of rule twenty-two of this court, considered only such of the interrogatories and answers as have been thus pointed out. They exhibit the following facts: On January 11, 1895, appellee Rickel and one Sprott were engaged as partners, under the name of Rickel & Sprott, in the real estate business at Auburn, Indiana, and at said date entered into a contract with appellant Albany Land Company (hereinbefore set out in the statement of the complaint) for the sale of a large number of lots which the company then owned at Albany, Indiana. The contract was spread upon the minutes of the company on said day, but was not reduced to writing and signed by the parties until the following May 9. Immediately upon entering into the contract in January, 1895, Rickel went to Albany and entered upon the performance of the contract for his firm, and moved his family from Auburn to Albany in the fall of 1895. Sprott continued to reside at Auburn, and to conduct the firm's business at Auburn, Kendallville, and other places, and occasionally visited Albany for a day or two at a time, and advised with Rickel concerning the sale of the company's lots. The partnership, at their own expense, advertised the company's lots for sale in various newspapers, and by printed circulars sent through the mails, and personally visited many places, and solicited the location and establishing of factories at Albany, no part of which expense was ever repaid to them. On March 13, 1896, Sprott assigned all his interest in the business under the contract with appellant to Rickel. Many lots had been sold by Rickel prior to said assignment, and ten or more

were sold by him afterwards under the contract; but business was depressed, money scarce in the community, and there was but little demand or sale for lots at Albany during the year 1896, and no sales were made in May, June, July, August, September, or October of that year, and on October 21, 1896, the company in writing, by Charles Smith, its president, peremptorially, and without assigning any reason therefor, revoked said contract and agency. After the assignment by Sprott to Rickel, the latter continued to make to the company monthly reports of sales, and of receipts and expenditures in the management of the company's real estate, and made such reports, and stated all accounts in his individual name, and the company executed to him checks and other papers in his individual name.

It has been uniformly held by this court that special facts found by the jury in answer to interrogatories propounded to them will not prevail against the general verdict, unless such special facts, when considered of themselves, and after indulging all reasonable presumptions against them, are found inherently so repugnant and inconsistent with the general verdict, supported by all reasonable intendments, that they can not be reconciled therewith, and one or the other is necessarily erroneous. The reason for the rule as stated in *City of South Bend* v. *Turner*, 156 Ind. 418, 54 L. R. A. 396, 83 Am. St. 200, is "that the jury is required to pronounce upon all the issuable facts proved in the case, while the court in testing the force of isolated facts disclosed by answers to interrogatories does not know and can not know, what other facts touching the same matters were rightfully before the jury to justify their verdict." Therefore any fact that might have been properly proved under the issues must be considered as proved, in determining the legal force of the special findings as against the general verdict.

It is first contended that the contract sued on shows that the employment of Rickel & Sprott counted on the joint

service of the partners in the sale of the company's lots, and on a special confidence in their combined judgment and influence in locating factories, and in otherwise promoting sales, and as the special findings show that Sprott continued the firm's business at Auburn, and did not actively engage in the business of the company, and did, while the contract was running, assign to Rickel all his interest therein, it does thereby conclusively appear that the partners broke and abandoned the contract, and can not, therefore, recover damages for a breach precipitated by themselves. Counsel for appellant overlook the fact that the contract between the parties contains no stipulation that the partners should both give up their established business at Auburn, and actively and conjointly engage in selling the land company's lots at Albany. It is not stated in the contract whether the business of the agency should be conducted immediately and personally by both or either of the partners, or whether they should, or not, give up their established business in Auburn and other places, or whether they should, or not, confine their operations in real estate to the business of the company at Albany. These things, being unexpressed in the contract, will be governed by what is reasonable and usual in such engagements and enterprises. The terms of the employment being general it will be implied therefrom that the firm assumed only the obligation to devote to the business such a degree of diligence, energy, and skill, and such methods as are customary and usual with reasonably prudent and successful land-agents in employments of like character and importance. But it can not be implied from general terms that the partnership undertook to give up all other business of like character, or that both should devote all their time to this particular employment, or that both should for any of the time actively and personally engage in the particular employment. The rule is that when a firm is employed, it is the partnership that is engaged as agent, and not the

individual members; and, in the absence of anything to show a contrary intent, either partner may execute the power, and his act is the act of the partnership and in strict pursuance of the power. Mechem, Agency, §65; *Deakin* v. *Underwood,* 37 Minn. 98, 33 N. W. 318, 5 Am. St. 827; *Eggelson* v. *Boardman,* 37 Mich. 14.

The finding that Sprott assigned his interest in the contract to Rickel is not in conflict with the general verdict. If it be assumed that the assignment effected a dissolution of the partnership, and that a dissolution operated *ipso facto* as a revocation of the agency, which may be said to be the general rule, still it was alleged in the complaint, and provable under the issues, that the assignment was made with the knowledge and consent of the company, and we must assume that it was so proved. And a knowing assent to the assignment was equivalent to an agreement to substiute the assignee for the assignor.

But it is insisted by appellant that the findings show that the company gave no consent to the assignment, and the following interrogatory and answer are relied upon: "Did the Albany Land Company ever consent to the assignment by Sprott of his interest in the contract between the firm of Rickel & Sprott and said Albany Land Company to said Rickel? A. Evidence not conclusive." This answer amounts to nothing, because it does not pretend to state what the fact was, as shown by a preponderance of the evidence. The answer that the evidence was not conclusive implies that there was evidence upon that point, but which did not reach that degree of cogency and force that may be termed conclusive. What the weight of the evidence showed is not stated, and the incident must, therefore, be treated as if the interrogatory had been left wholly unanswered. But conceding appellant's contention that the language is equivalent to a negative answer, still the general verdict must stand. Other findings show that after the assignment Rickel proceeded with the business of the

agency in his individual name under the contract; sold lots for the company, seven of which brought $3,600, which sales the company knowingly approved and accepted; also received from Rickel monthly reports of the business rendered in his individual name, executed to him, individually, checks, receipts, and other papers, and for a period of seven months went on dealing with him in relation to the business of the agency in conformity to the terms of the contract. If the assignment was unauthorized, and the company afterwards knowingly accepted the fruits and benefits of Rickel's individual acts, such an acceptance was a ratification which clothed the transactions with all the validity and obligation that would have been imparted by a previous authority to do them. *Hauss* v. *Niblack,* 80 Ind. 407, 412; Mechem, Agency, §148, and cases collated.

3. Over appellant's objection the cause was submitted to a jury impaneled from the bystanders. This action of the court is claimed to be erroneous. The record shows that the cause was put at issue at the September term, 1900, and during that term set for trial before a jury, requested by appellee, on the 28th day of January, 1901, the same being a day in the next succeeding term. The members of the regular panel drawn for the January term had been summoned to appear on January 30, and were not in attendance upon the court when said cause was called for trial on the 28th. Appellant demanded the regular panel, and objected to a special jury. The court entered an order reciting the absence of the regular panel, and that the business of the court required the calling of a special jury from the bystanders; whereupon a special jury was called; and appellant having exhausted his peremptory challenges, and challenged all persons for cause who were legally disqualified, over his objection, the trial proceeded. "In all civil cases the right of trial by jury shall remain inviolate." So says the state Constitution, article 1, §20.

But it does not say that the right to trial by the regular panel shall remain inviolate. And when a litigant in a civil case is accorded a trial by jury possessed of all the statutory qualifications, he has received all that is guaranteed by the fundamental law. The qualification of jurors, and the method of their selection, is left wholly to the legislature. That body has provided (§1859. Burns 1901) that in civil actions, where the parties are entitled to a trial by jury, and either party shall demand such trial, the sheriff shall call a jury from the regular panel. Section 531 Burns 1901 provides further: "The court shall have the power, when the business thereof requires it, to order the impaneling of a special jury for the trial of any cause."

These statutes apply to both criminal and civil cases. §528 Burns 1901. It is clearly implied from these enactments that the provision for the impaneling of the jury from the regular panel is directory only, to be obeyed as far as a proper dispatch of business before the court will allow, but if for any cause the regular panel is not available, and, in the sound discretion of the presiding judge, the business of the court requires the impaneling of a special jury for a particular case, it may be properly done. So it has been held that when a case is called, and the regular panel is out considering their verdict in another case, the court may order a special jury from the bystanders. *Evarts* v. *State,* 48 Ind. 422; *Myers* v. *Moore,* 3 Ind. App. 226, 229. And when the regular panel has failed to agree, and become thereby disqualified in the case, a special jury may be ordered and a retrial had at the same term, over the objection of the defendant. *Pierce* v. *State,* 67 Ind. 354. Where the proper officers have failed or refused to draw and impanel a jury, "or where, for any other cause whatever, no traverse jury shall be present at any term of the court, it shall be lawful, and is hereby made the duty of the circuit court, if the business thereof require

it," to cause a jury to be summoned from the bystanders. §1461 Burns 1901; *Heyl* v. *State,* 109 Ind. 589.

It was manifestly the legislative intent to give the court, in controlling and expediting its business, a large discretion in determining when the calling of a special jury is required, and it is only when it clearly appears that a party has been unnecessarily deprived of a trial before the regular panel that the action of the court will be reviewed. Gillett, Crim. Law, §827.

The record here shows that the case was at a previous term set for trial on January 28, before a jury requested by appellee, and that the regular panel was summoned to appear on January 30. Why the jury was not summoned to appear until two days after the beginning of jury trials does not appear—whether by the fault or inadvertence of the court or the officers, or whether by agreement of the litigants. However it was brought about, it may well be assumed that the trial calendar was full of other cases, that the witnesses were in attendance, and that a postponement would delay and disarrange the other business of the court. We must, therefore, presume that the court had justifiable cause for ordering the special jury. Appellant cites *Wilson* v. *State,* 42 Ind. 224, in support of its position; but it is apparent that since the decision of that case this court has broken away from the narrow limits there laid down, and that case can no longer be regarded as an authority.

We find no error in the record. Judgment affirmed.